IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 5:14-CV-690-FL

| | |
|---|---|
| In re: )<br>)<br>WILLIAM ROBERT ANDERSON, JR. )<br>and DANNI SUE JERNIGAN, )<br>)<br>      Debtors, )<br>)<br>_____ )<br>)<br>WILLIAM ROBERT ANDERSON, JR. )<br>and DANNI SUE JERNIGAN, )<br>)<br>      Plaintiffs, )<br>   v. )<br>)<br>JOHN F. LOGAN, in his capacity as )<br>Chapter 13 Bankruptcy Trustee; )<br>WAYNE HANCOCK; and TINA )<br>HANCOCK, )<br>)<br>      Defendants. ) | ORDER |

This matter is before the court on appeal by plaintiffs/debtors, from an order of the United States Bankruptcy Court, confirming the trustee's proposed plan, as modified by the court's order granting defendants' objection[1] to the trustee's plan. <u>In re Anderson, et al.</u>, No. 13-05843-8-SWH (Bankr. E.D.N.C. Sept. 5, 2014). The parties have submitted briefs on appeal, and in this posture the issues raised are ripe for ruling. For the reasons discussed below, the order confirming the plan is affirmed as modified herein.

---

[1] All references to "defendants" should be read to include only defendants Wayne and Tina Hancock. Defendant Logan is a nominal defendant only.

## BACKGROUND

On September 1, 2011, plaintiffs purchased a home at 6137 Wolverhampton Drive, Raleigh, North Carolina, from defendants Wayne and Tina Hancock, for use as their principal residence. Defendants financed the transaction, in the amount of $255,000. Plaintiffs executed a promissory note in the same amount, secured by a deed of trust.

The terms of the note provide that plaintiffs will make monthly payments in the amount of $1,368.90 for a period of 30 years, due the first of each month. This figure includes a monthly installment payment toward satisfaction of the principal debt, as well as interest payments calculated at a rate of five percent (5%) per annum. The note also gives defendants certain protections in the event of default. Upon occurrence of default, defined as a payment delinquent by more than 30 days, the interest rate automatically increases from five percent (5%) to seven percent (7%) per annum, resulting in increased monthly payments of $1,696.52 for the life of the loan. "As an alternative to increasing the interest rate," the note allows defendants to accelerate the maturity date of the loan, or pursue any other remedy provided for by law. (Promissory Note, Bankruptcy Claim Register 3-2, pt. 2).

On April 1, 2013, plaintiffs failed to make their monthly payment. When no payment was received by May 4, 2013, defendants notified plaintiffs they were in default, and that future monthly payments should reflect the increased rate of interest, as provided for in the note. On May 6, 2013, plaintiffs responded and requested the ability to become current on their arrears. Defendants responded, stating they would "work with" plaintiffs, implying they would not impose the seven percent (7%) interest rate immediately.

On May 16, 2013, when no payment had been received, defendants contacted plaintiffs and insisted the April 2013 payment be received by May 19, 2013. Defendants also reminded plaintiffs their May 2013 payment was due, and requested plaintiffs submit a proposed payment plan for that monthly installment.

In response to defendants' ultimatum, plaintiffs requested up to and including May 31, 2013, to make the overdue April installment payment. Nevertheless, plaintiffs failed to pay, and on June 3, 2013, defendants informed plaintiffs they would be imposing the seven percent (7%) interest rate for the 28 remaining years on the loan. Subsequently, plaintiffs failed to make any further payments. Sometime prior to August 30, 2013, defendants notified plaintiffs of their intent to accelerate the maturity date of the loan, and on August 30, 2013, defendants initiated foreclosure proceedings.[2]

On September 16, 2013, plaintiffs petitioned for relief under Chapter 13 of the Bankruptcy Code, seeking adjustment of debts. As a result, the foreclosure proceeding was stayed. Plaintiffs' bankruptcy petition valued their home at $265,000. In addition, it disclosed a secured debt owed to defendants in the amount of $256,630.78, listing $1,368.90 as the average monthly payment. These amounts reflect the amount owed over the life of plaintiffs' loan, calculated at a five percent (5%) interest rate. Plaintiffs' bankruptcy plan, filed contemporaneously with their petition, proposed monthly payments of $1,368.90 over the life of the loan to satisfy the debt.

On September 18, 2013, defendants filed in the bankruptcy court proof of claim, evidencing a debt owed in the amount of $261,247.99, with the difference a result of defendants' calculation employing the post-default seven percent (7%) interest rate. On January 15, 2014, the trustee held

---

[2]The bankruptcy court found that defendants accelerated the loan prior to initiating foreclosure proceedings. However, defendants dispute that they accelerated the maturity date of the loan. (Defs. Br., DE 26, at 6). Defendants do not dispute that they initiated foreclosure proceedings. This factual discrepancy is of no moment in the court's resolution of the instant appeal.

3

a meeting of creditors and equity security holders, as required by 11 U.S.C. § 341 (the "341 Meeting"). The minutes of the 341 Meeting and trustee's motion for confirmation of the plan were filed the same day.

The trustee's plan proposed a five year bankruptcy period, to commence in December 2013. Consistent with plaintiffs' proposed plan, under the trustee's plan, plaintiffs were to pay the past-due debt, owed to defendant for the months between April and November 2013, calculated at a five percent (5%) per annum interest rate, over the course of those five years. In addition, the plan reinstated the original maturity date of plaintiff's loan, September 1, 2041, a process known as "de-celeration." Thus, the plan allowed plaintiffs again to make monthly payments toward satisfaction of the promissory note, and calculated such payments in the amount of $1,368.90 per month, reflective of the five percent (5%) per annum interest rate.

On February 3, 2014, defendants' filed an objection to plaintiffs' proposed plan. In their objection, defendants argued plaintiffs owed monthly payments in the amount of $1,696.52, rather than $1,368.90, to reflect the bargained for post-default interest rate. Defendants also objected to the trustee's calculation of the amount plaintiffs owed as arrears to be paid over the life of the plan, because the figure had been calculated using the lower, five percent (5%) rate of interest, rather than the post-default rate. This period included the three month period between plaintiffs' bankruptcy petition and the December 2013, effective date of the plan.

The bankruptcy court held hearing on May 21, 2014, to address the proposed plan. At hearing, the bankruptcy court sustained defendants' objection and orally approved the trustee's proposed plan as modified. In a September 5, 2014, order grounding its oral decision, the bankruptcy court held plaintiffs were entitled to cure the default and set aside the acceleration giving

rise to the August 30, 2013, foreclosure proceedings. However, the court also held that the "cure" could not reach the increased interest rate, bargained for by the parties, ultimately concluding defendants were entitled to payment at the post-default rate of interest.

The bankruptcy court's analysis of plaintiffs' right to cure turned on the interplay of three sections of 11 U.S.C. § 1322(b). The bankruptcy court considered plaintiffs' argument that they had the right to "cure" their default, by setting aside both the acceleration and higher interest rates under § 1322(b)(3) & (b)(5). The bankruptcy court also considered defendants' argument that allowing plaintiff to set aside the higher rate of interest in favor of the five percent (5%) rate would modify their bargained-for rights secured by the promissory note, in contravention of § 1322(b)(2). Ultimately, the bankruptcy court held plaintiffs' proposed "cure," to the extent it set aside the seven percent (7%) interest rate, was actually a "modification" of defendants' rights as prohibited by the statute. Plaintiffs' appeal followed. On appeal, plaintiffs challenge the bankruptcy court's holding that application of the pre-default interest rate constitutes a modification of defendants' rights, requiring all post-petition payments be calculated using the higher default interest rate.

## COURT'S DISCUSSION

A.    Standard of Review

This court has jurisdiction pursuant to 28 U.S.C. § 157(c)(1) to review the bankruptcy court's proposed findings of fact and conclusions of law. This court "shall make a de novo review upon the record . . . of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made." Fed. R. Bankr. P. 9033(d); see also Humboldt Express, Inc. v. Wise Co. (*In re* Apex Express Corp.), 190 F.3d 624, 630 (4th Cir. 1999) (*de novo* standard applies to both findings of fact and conclusions of law). This court "may accept, reject, or modify

5

the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions." Fed. R. Bankr. P. 9033(d).

B.     Analysis

Plaintiffs argue they may cure their default and reinstate the pre-default interest rate through their bankruptcy plan. Section 1322 outlines both mandatory and permissive aspects of the plan. See 11 U.S.C. § 1322. Sub-section A lists those things which all Chapter 13 bankruptcy plans must do. Id. § 1322(a). On the other hand, § 1322(b) lists things that the plan *may* do, to allow the plan to address the circumstances of the individual debtor. Id. § 1322(b).

As pertinent here, § 1322(b) generally allows the bankruptcy plan to modify creditor's rights and cure or waive defaults. Id. § 1322(b)(2), (b)(3), & (b)(5). The power to modify a creditor's rights is tempered when the creditor holds a secured claim, secured by a security interest in the debtor's principal residence, as defendants do. See id. § 1322(b)(2). "Notwithstanding" the "anti-modification" language of § 1322(b)(2), long-term debts, such a mortgages, can be "cure[d]", so long as the cure occurs "within a reasonable time," and the debtor "maint[ains] . . . payments" on the debt. See id. § 1322(b)(5).

Plaintiffs' argument must fail because a "cure" is not the appropriate means to address the applicable interest rate on a long-term debt. A cure "reinstates a debt to its pre-default position, [and] returns the debtor and creditor to their respective positions before the default." Litton v. Wachovia Bank (*In re* Litton), 330 F.3d 660, 644 (4th Cir. 2003); see also Landmark Fin. Servs. v. Hall, 918 F.2d 1150, 1154 (4th Cir. 1990), abrogated on other grounds by, Rake v. Wade, 508 U.S. 464 (1993). As such, a "cure" merely allows the debtor to pay off arrears and bring current the lending relationship. See id.

6

To "cure" under § 1322(b)(5), the debtor must meet two requirements. See Hall, 918 F.2d at 1153. (noting that the bankruptcy code imposes "requirements" to cure pursuant to § 1322(b)(5)). First, the debtor must bring current all defaults "within a reasonable time." See id. Second, the debtor also must "maintain payments" on the defaulted long-term debt over the life of the loan. Id. Curing and maintaining payments are distinct legal concepts, and thus the bankruptcy plan may not mix "curing" apples with "maintenance of payment" oranges. See Litton, 330 F.3d 644-45 (allowing payment of arrears over the life of the plan, with regular payments thereafter); Hall, 918 F.2d at 1153 (noting a plan may take advantage of a cure provision by ensuring the cure happens "within a reasonable time" and "that the regular mortgage payments be maintained."); see also Sapos v. Provident Inst. of Sav. in the Town of Boston, 967 F.2d 918, 926 (3d Cir. 1992) (holding that the bankruptcy plan must explicitly state how it is to cure arrears "within a reasonable time" over the life of the plan), overruled on other grounds by Hammond v. Commonwealth Mortg. Corp. (*In re* Hammond), 27 F.3d 52 (3d Cir. 1994). Accordingly, plaintiffs' arguments regarding their ability to cure are without merit.

Plaintiffs argue that the term "cure" should be construed more broadly, relying on Litton, wherein the Fourth Circuit defined "cure" as the power to "reinstate a debt to its pre-default position, or[, in other words, to] return[] the debtor and creditor to their respective positions before the default." Litton, 330 F.3d at 644. However, when that statement is read in context, Litton makes clear that a "cure" is the opportunity to satisfy a defaulted debt over the life of the plan. For instance, in Litton, the court interpreted § 1322(b)(5)'s "cure" language to allow the debtor to "catch up" on a $55,000 debt over the three-month life of her plan, and resume the preexisting lending relationship the debtor shared with her bank. Id. at 641. The court also noted that the debtor could

"maintain payments," or make "regular payments as called for by the" underlying agreement. Id. Litton does nothing to supplant the reasoning of Hall, which, as discussed previously, prohibits a "cure" from affecting the amount of prospective monthly payments to be made outside the plan.

Nevertheless, construction of the term "cure" does not resolve the parties underlying dispute. Rather, the applicable interest rate will depend on construction of the term "maintenance of payments" under § 1322(b)(5). "Maintenance of payments" means "making the same principal and interest payments as provided in the note." *In re* Martin, 444 B.R. 538, 544 (Bankr. M.D.N.C. 2011) (citations omitted); accord *In re* McGregor, 172 B.R. 718, 721 (Bankr. D. Mass. 1994). Thus, the court must consider the language of the promissory note to address the parties' underlying dispute.

In North Carolina, promissory notes are contracts and subject to ordinary principles of contractual interpretation. See *In re* Foreclosure of Deed of Trust by Goforth Props. Inc., 334 N.C. 855, 376 (1993); *In re* Hall, 210 N.C. App. 409, 414-15 (2011). "Where the terms of the contract are not ambiguous, the express language of the contract controls in determining its meaning and not what either party thought the agreement to be. Crockett v. First Fed. Sav. & Loan Ass'n, 289 N.C. 620, 631 (1976).

Here, the promissory note evidences that defendants were entitled to either the default interest rate, or the power to accelerate. But, the note does not allow both to occur simultaneously. The relevant provision of the promissory note provides:

> In the event the borrower has not paid their monthly obligation within 30 days of the due date, then borrower shall be in default. Upon that occurrence, the borrower's interest rate shall increase to Seven percent (7%) for the remaining term of the loan until paid in full. The increase in interest rate shall result in a new payment amount of $1,696.52, which shall be due and payable monthly according to the terms stated herein, save and except the increase in rent payment. *As an alternative to an increase in the interest rate* upon default occurring 30 days after the payment due date, lender may, in the lender's sole discretion either 1) require borrower to pay

8

>       immediately the full amount of principal which has not been paid and all interest that
>       I [sic] owe on that amount . . . or 2) pursue any other right available to lender under
>       North Carolina law.

(Bankruptcy Claim 3-2, pt. 2) (emphasis added). The phrase "as an alternative to an increase in the interest rate" works to limit defendants' remedies in the event of default. In particular, it establishes acceleration as a disjunctive alternative remedy, rather than an additional one. Defendants were entitled to either a seven percent (7%) rate of interest or the power to accelerate the loan.

Upon defendants' election to accelerate the maturity date of plaintiffs' loan, defendants lost their right to demand the default interest rate. As the bankruptcy court noted, only the cure can decelerate the maturity date of the loan. Plaintiffs' loan remained accelerated during the pendency of their Chapter 13 petition, filed September 16, 2013. However, defendants' power to enforce the foreclosure was checked by the bankruptcy code's automatic stay provision. 11 U.S.C. § 362; see also Nobleman v. Am. Savs. Bank, 508 U.S. 324, 330 (1993) (noting the right to foreclose is checked by the bankruptcy code's automatic stay provision). Accordingly, for the period corresponding to the pendency of plaintiffs' bankruptcy (September 16, 2013 to December 2013), defendants are entitled to the payments calculated using the pre-default interest rate of five percent (5%) per annum.

After the December 2013, effective date of the plan, defendants are entitled to monthly payments calculated at the default rate of interest of seven percent (7%) per annum, for the remaining life of the loan. Once plaintiffs defaulted on their loan obligation, the note afforded defendants two remedies, an increased interest rate or acceleration and foreclosure. Plaintiffs bankruptcy plan has eliminated defendants' ability to demand full payment of the loan through imposition of a cure. However, given plaintiffs' earlier default on the loan, and the inapplicability

9

of the "cure" imposed by the plan on plaintiffs' payments to be maintained, the court cannot remove defendants' bargained-for right to demand interest at the default rate.

## CONCLUSION

Based on the foregoing *de novo* review of the bankruptcy court's conclusions of law, the bankruptcy court's order approving the trustee's plan, as modified by the defendants' objection, is AFFIRMED as MODIFIED herein. Accordingly, debtors' plan is MODIFIED as follows: debtors must make payments calculated at a rate of five percent (5%) per annum, for the period between September 16, 2013, and the December 2013, effective date of the plan. For the period after the plan's effective date, debtors must make payments each month reflective of the increased rate of interest at seven percent (7%) per annum over the life of the loan.

SO ORDERED, this the 6th day of April, 2015.

_____
LOUISE W. FLANAGAN
United States District Judge